UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JONATHAN S. HOLSKEY | ) | BANKRUPTCY NO. 14-40582 |
| NIKKI J. HOLSKEY | ) | CHAPTER 7 |
| DEBTORS | ) | |
| | ) | |
| | ) | |
| PHI AIR MEDICAL, L.L.C. | ) | |
| PLAINTIFF | ) | |
| v. | ) | ADV. NO. 14-04028 |
| JONATHAN S. HOLSKEY | ) | |
| DEFENDANT | ) | |

**MEMORANDUM**

This matter came before the Court for trial on January 10, 2016. Both the Plaintiff, PHI Air Medical, L.L.C., and the Defendant, Jonathan Holskey, appeared at trial and were represented by counsel. At the trial, the parties presented evidence, both written and documentary. Upon consideration of the evidence presented the Court enters the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bank. P. 7052.

**FINDINGS OF FACT**

On September 11, 2013, PHI Air Medical, L.L.C. ("PHI") rendered medical air transport services to the minor son of the Defendant, Jonathan Holskey ("Holskey"). PHI transported the minor by helicopter from Baptist Health Madisonville, Kentucky, to the Kosair Childrens Hospital in Louisville, Kentucky. Prior to transport, Holskey executed a Patient Consent and Assignment of Benefits form ("PCAB Form").

The PCAB Form assigned and transferred to PHI all of Holskey's rights in and to insurance benefits payable as a result of the services rendered by PHI. Wendy West, the representative for

PHI, testified on behalf of PHI. She testified that her position with PHI involved oversight for billings and collection. Ms. West testified that PHI submitted to Blue Cross Blue Shield ("BCBS") a Health Insurance Claim Form 1500 for PHI's services in the amount of $47,910.00.

Ms. West also testified that after rendering services, PHI contacts the insured party, explaining the billing process, explaining what to expect, and explaining what was expected from the insured. In this case, Ms. West testified that on or near October 16, 2013, PHI sent a Non-Contracted Insurance Initial Billing Letter to Holskey. That letter expressly stated that BCBS "may send the claim payment directly to you instead of PHI Air Medical holding you responsible for the entire claim balance, interest and/or penalty delay in getting the claim payment to PHI Air Medical." Holskey denied receiving this letter, but his testimony on this point was not credible.

Ms. West also testified that PHI also sent a Final Notice to Holskey. That Notice included the following language: "Please be advised that your account is now delinquent because of failure to remit payment to PHI Air Medical. Our records indicate your insurance processed a payment to you on behalf of services rendered by PHI Air Medical." Again, Holskey denied receiving this letter, and again his testimony on this point was not credible.

At some undetermined point in late October / early November 2013, BCBS sent to Holskey an Explanation of Benefits ("EOB") which explained that "services were rendered by a non-participating provider. The attached check is to reimburse for the covered services rendered. You are responsible to pay the provider." While Ms. West did not see this particular EOB, she testified that in her experience, the EOB's for medical air transport services always included this language and also identified the identity of the provider. Holskey also denied receiving the EOB, but, again, his testimony was not credible.

2

In early November, 2013, Holskey received and cashed a check from BCBS in the amount of $17,278.00 (the "Proceeds") generated as a result of PHI's services.

On November 6, 2013, Holskey deposited the Proceeds into a Chase bank, on which he was listed as the sole account holder. Holskey did not remit any of the Proceeds to PHI. Instead, within 30 days after the deposit, the Proceeds were spent on other purposes.

According to Holskey's affidavit, he "settled" with BCBS and received the Proceeds. He believed the check was for reimbursement of his living expenses (lodging, food, travel) for the period of time he stayed in Louisville with his minor son after the accident. He further stated he "used the funds to catch-up on secured creditor payments (2 cars and home mortgage), and the utility bills for [his] home, and household expenses. [He] also paid medical bills, including e-rays [sic], and doctor bills, including the eye doctor specialist. [He] spent approximately $2,000.00 for Christmas for [his] three children. [He] paid other medical bills until the funds deposited into his account ultimately ran out."

According to his deposition, Holskey testified that he paid close to $7,000 on medical bills. (Depo. Pg. 30) He stated that he paid these bills in cash. He further stated he used the proceeds to catch up on bills. (Depo. Pg. 46). He also stated he used the funds to make car payments. (Depo. Pg. 48). Holskey also testified in his deposition that he thought the Proceeds were for him. (Depo. Pg. 52). Like in his affidavit, Holskey testified at his deposition that he believed the funds were to reimburse him for his expenses incurred in Louisville at the time of the child's injury, but admitted he never submitted any receipts or expenses to BCBS other than medical bills. (Depo. Pg. 42).

In an interrogatory, Holskey was asked to list every medical provider he paid in cash or check during the relevant time period, including the provider, the amount paid, and the date of the

3

service and payment amount.  In his sworn answer, Holskey stated he paid a Dr. Gaylen for follow-up visits, and paid approximately $40.00 cash for those services.  This answer directly contradicts his deposition testimony, wherein he stated he paid $7,000 in medical bills in cash, and his affidavit testimony wherein he stated he used the proceeds to pay medical bills, x-rays and doctor bills.

At trial, Holskey presented another version of what happened to the Proceeds.  Holskey testified that he never personally paid any of the medical bills.  He testified he never submitted any receipts for his travel, food, and lodging in Louisville.  He also testified that he had no idea what the Proceeds were for, that he took no action to discover what the Proceeds were for, and that he did not want to know why BCBS sent the Proceeds to him.

Holskey testified at trial that the funds were somehow absconded with by his now ex-spouse. He claimed that his ex-spouse had access to his checking account and that she took the Proceeds through the use of cash advances at such places as Wal-Mart, and a sporting goods store called Uncle Lee's.  He now claims that his ex-wife, not him, took the Proceeds, and that she may have used the funds on drugs, or on a boyfriend.  To support his claim that it was his ex-wife and not him that spent the funds, Holskey introduced evidence that the charges were made on days of the week that he regularly worked.  The Court found this evidence totally unconvincing in that it seemed to imply that Holskey worked for the entire 24 hour day of the given dates and that he could not have made the charges either before or after any given work day.

On May 30, 2014, Debtor and his now ex-spouse filed for relief under Chapter 7 of the United States Bankruptcy Code. On August 29, 2015, PHI filed this adversary proceeding seeking to except the $17, 248 debt from discharge.  The complaint sought a judgment declaring that the $17,248 debt owed by Holskey non-dischargeable pursuant to 11 U.S.C. § 523(a)(4) and/or

4

§ 523(a)(6). Holskey answered denying the allegations and seeking a judgment against PHI for his attorney fees incurred in connection with the defense of the action, plus pre-judgment and post-judgment interest thereon.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and venue is proper under 28 U.S.C. § 1409(a). The parties have submitted to the jurisdiction of this Court.

PHI seeks to except this debt from discharge under 11 U.S.C. § 523(a)(4) and/or § (523(a)(6). Section 523 provides in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
> ....
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(4) and (6).

PHI alleges that its claim against Holskey falls within either or both of these sections; Holskey disagrees. PHI bears the burden of proving each of the elements of those sections of the Bankruptcy Code by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); In re Kennedy, 249 F.3d 576 (6th Cir. 2001). Furthermore, exceptions to discharge are strictly construed against creditors. Rembert v. AT & T Universal Card Servs. (In re Rembert), 141 F.3d 277, 280–81 (6th Cir. 1998).

Under 11 U.S.C. § 523(a)(4), three distinct acts of malfeasance can create an exception to

5

discharge, including "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." To withhold a debt from discharge for "fraud or defalcation while acting in a fiduciary capacity," the Court must find that an express or technical trust existed between the parties. Brady v. McAllister (In re Brady), 101 F.3d 1165, 1173 (6th Cir.1996). Here, there was no evidence presented of an express or technical trust.

The term "fiduciary capacity," however, does not modify the words "embezzlement" or "larceny." In re James, 42 B.R. 265, 267 (Bankr. W.D. Ky. 1984). To succeed on a theory of embezzlement, the Plaintiff must prove that "(a) the Debtor appropriated funds for his own benefit, and (b) he did so with fraudulent intent or deceit. Both the intent and the actual misappropriation necessary to prove embezzlement may be shown by circumstantial evidence." Id. To succeed on a theory of larceny, the Plaintiff must show that the Defendant has "wrongfully and with fraudulent intent taken property from its owner." In re Rose, 934 F.2d 901, 903 (7th Cir.1991).

To establish that a debt is nondischargeable under 11 U.S.C. § 523(a)(6), a plaintiff must prove that the debtor not only intended the act that caused the harm, but intended the harm. See Kawaauhau v. Geiger, 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). To succeed on this count, PHI must prove that Holskey either (1) willed or desired to harm or (2) that harm was substantially certain to occur as a result of his behavior. Markowitz v. Campbell (In re Markowitz), 190 F.3d 455, 465 (6th Cir. 1999).

Before analyzing each claim and the evidence presented, the Court will first start with a discussion on the credibility of the witnesses. Two witnesses testified during this trial: (1) Holskey and Wendy West, the person charged with oversight for billing and collection for PHI. Ms. West testified as to the billing procedures and the efforts undertaken by PHI to recover the Proceeds paid

6

to Holskey. She was forthright and responded directly and promptly to questions, both on direct and cross-examination. This Court found Ms. West to be a very credible witness.

Holskey also testified. He appeared to be intelligent and capable of telling the difference between truth and lies. The Court found Holskey's answers evasive, and very self-serving. He contradicted his other sworn statements numerous times, and could not or would not explain the discrepancies. The Court also found that Holskey had a very selective memory, easily remembering the facts that supported his claim, while not being able to remember facts that might have gone against him.

Holskey provided testimony at trial to explain the loss of the Proceeds. He admitted receiving the Proceeds, admitted placing the Proceeds in a bank account with only his name on it, but denied actually spending the proceeds. Instead, Holskey tried to blame his now divorced spouse for the use of the funds. He insinuated that his ex-spouse may have used the funds for drugs or on her boyfriend. Other than his testimony, there was no other evidence presented to corroborate this story.

This story may have been more believable if Holskey had been more consistent with it throughout this case. Nowhere in his affidavit, his deposition, or interrogatories did Holskey mention that it was his wife, rather than him, that absconded with the funds. If this had truly been case, the Court is sure that it would have been revealed at an earlier point in the litigation. Instead, Holskey waited until trial to drop this explanation, without giving PHI an opportunity to investigate this claim for its veracity.

The Court had ample opportunity to observe Holskey and to listen to the answers he gave on both direct and on cross examination. In addition to observing and listening to Holskey at trial,

7

this Court has re-listened to the trial recording, and reviewed the extensive notes that the Court made at trial. Re-listening to the trial recording, and reviewing the notes confirmed the initial reactions that this Court had during the course of the trial. These initial reactions, plus post-trial reflections, have led this Court to conclude that Holskey was simply not a credible witness.

The Court arrived at this conclusion for several reasons. First, Holskey's understanding of what the Proceeds were for simply did not make sense. On one hand, he argued it was to reimburse for medical bills he paid. Yet, there is some question whether he actually paid any medical bills at all. Depending on which sworn testimony of Holskey's that you believe, he either paid $40 in medicals, $7,000 in medicals, or no medicals at all.

He also testified that he was not aware that the funds were to be used to repay PHI. The PCAB Form that Holskey signed expressly provided that "In the event any [insurance] proceeds are paid directly to me, I agree to pay them promptly to [PHI]." Holskey's testimony that he did not believe his insurer would pay for the air ambulance services, and therefore the funds could not belong to PHI was simply not believable. He admitted he spoke with PHI, he admitted PHI advised him on how and what to say to BCBS to be reimbursed, yet now claims he did not know the funds belonged to PHI. He could offer no explanation of why BCBS would send him the Proceeds, if he had not submitted medical bills for that amount or incurred expenses in that amount.

Holskey denied receiving the Explanation of Benefits ("EOB") which explained that services were rendered by a non-participating provider and that the attached check was to reimburse for the covered services rendered. The Court does not believe BCBS would send Holskey a check for $17,248 without some explanation. Rather, the Court believes that Holskey received the EOB, like every other insured of BCBS, and either ignored the language concerning PHI or disregarded it.

8

This Court finds that PHI met its burden of proof with respect to larceny under § 523(a)(4) and willful and malicious injury under § 523(a)(6). As stated above, this debt may be nondischargeable on the grounds of embezzlement or larceny if PHI could prove that (a) Holskey appropriated the funds for his own benefit and (b) that he did so with fraudulent intent or deceit. Both elements are necessary and may be proved by circumstantial evidence. In re James, 42 B.R. 265, 267 (Bankr. W.D. Ky. 1984); In re Smith, 429 B.R. 864, 871 (Bankr. W.D. Ky. 2010).

The trial evidence established that Holskey received funds that he had assigned to PHI. There is no question that Holskey exercised complete control over the Proceeds received from BCBS. There is also no question that the Proceeds belonged to PHI. Due to the assignment, Holskey had no right to retain the funds, yet he spent the funds on his own personal expenses. Holskey knew that the funds did not belong to him, that they should have been used to reimburse PHI, but decided to used the funds for his own benefit. Holskey took such actions wrongfully and with fraudulent intent or deceit. Accordingly, the evidence overwhelmingly supports the finding of nondischargeability based on embezzlement and/or larceny pursuant to 11 U.S.C. § 523(a)(4).

The Court could stop here, but will also address the § 523(a)(6) claim. PHI argues that this debt should be not dischargeable under § 523(a)(6), which provides that a debtor may not be discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." In 1998, the United States Supreme Court held that in (a)(6), the word "willful" modifies the word "injury" and thereby causes dischargeability to require a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). This is akin to an intentional tort whereby the actor must intend the consequences of the act and not simply the act itself. Id. at 61–62,

9

118 S.Ct. 974.

The willful and malicious standard is a stringent one, and "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Kawaauhau v. Geiger, 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Sixth Circuit, post Geiger, has held that "[a]n intentional or deliberate act alone does not constitute willful and malicious conduct under § 523(a)(6)." In re Romano, 59 Fed. Appx. 709, 2003 WL 731723, at 6-7 (6th Cir. Mar.3, 2003) Instead, the creditor must prove the debtor intended a deliberate or intentional injury, not merely a deliberate or intentional act that causes injury. "[Unless] the actor desires to cause [the] consequences of his act, or ... believes that the consequences are substantially certain to result from it, he has not committed a willful and malicious injury as defined under § 523(a)(6)." In re Kennedy, 249 F.3d 576, 580 (6th Cir.2001).

Here, as stated above, the Proceeds belonged to PHI. When Holskey spent the Proceeds, he was willfully and maliciously injuring PHI. Holskey intentionally took actions that necessarily caused, or was substantially certain to cause, injury to PHI. Holskey's failure to remit the Proceeds was egregious, and without a sufficient justification. The only justification provided at trial, that his ex-spouse took the funds, was simply not believable. As the trier of fact, this Court finds that by using the Proceeds to pay his own expenses and not paying PHI as he was obligated to do, Holskey's actions were intended to injure PHI. Holskey's actions were substantially certain to, and did, cause PHI harm. This Court finds it inconceivable that any objective observer could come to another conclusion. Thus, Holskey's actions meets the Kawaauhau test of a "deliberate or intentional injury." Under these circumstances, this Court finds that Holskey's actions caused a "willful and malicious injury" to PHI under § 523(a)(6) and, hence, the $17,248 claim is not

dischargeable.

Finally, Holskey in his answer and at trial requested attorney's fees.  Section 523(d) reads:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d).  The elements of a successful request for attorney fees under § 523(d) are that: (1) the creditor filed a dischargeability complaint under § 523(a)(2); (2) the complaint concerned a consumer debt; (3) the debt was found dischargeable; (4) the position of the creditor was not substantially justified; and (5) no special circumstances exist to make an award unjust.  See In re Thomas, 258 B.R. 167 (Bankr. N.D. Ohio 2001); In re Friend, 156 B.R. 257, 262 (Bankr. W.D. Mo. 1993).

In this case, because the Court finds the debt non-dischargeable, Holskey cannot meet the requirements § 523(d).  As such, Holskey request for attorney's fees must be denied.

## CONCLUSION

This was a credibility case.  The Court denied summary judgment for PHI twice in this case because it needed to test the credibility of Holskey on the issue of intent.  The Court needed to "see" Holskey and determine whether his story concerning the disposition of the funds was credible.  Had Holskey been consistent with his stories, this case very well could have gone another way.  Instead, the Court was faced with numerous stories, each with some kernels of truth, but none totally truthful.  The evidence was clear that Holskey signed away any insurance proceeds, that he was aware he did not own the Proceeds sent by BCBS, that he was reminded multiple times from multiple sources that

he did not own the Proceeds, yet he knowingly and willfully spent the Proceeds for his own purposes. As has been said many times, bankruptcy relief is limited to the honest but unfortunate debtor. Grogan v. Garner, 111 S.Ct. 654, 655 (U.S. 1991). For the reasons set forth above, this Court holds that PHI's claim against Holskey for $17,248 is nondischargeable under this bankruptcy under 11 U.S.C. § 523(a)(4) and (6). Each party is to bear their own fees and costs for the prosecution and defense of this adversary proceeding.

     A separate Judgment consistent with this Memorandum Opinion will be entered this same date.

_____
Alan C. Stout
United States Bankruptcy Judge
Dated: February 16, 2016

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JONATHAN S. HOLSKEY | ) | BANKRUPTCY NO. 14-40582 |
| NIKKI J. HOLSKEY | ) | CHAPTER 7 |
| DEBTORS | ) | |
| _____ | ) | |
| | ) | |
| PHI AIR MEDICAL, L.L.C. | ) | |
| PLAINTIFF | ) | |
| v. | ) | ADV. NO. 14-04028 |
| JONATHAN S. HOLSKEY | ) | |
| DEFENDANT | ) | |

**JUDGMENT**

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that judgment is granted in favor of the Plaintiff and against the Defendant and the $17,248 debt that was the subject of this adversary proceeding is excepted from discharge under 11 U.S.C. § 523(a)(4) and § 523(a)(6).

**IT IS FURTHER ORDERED** that the Defendant's request for attorney fees is denied.

This is a final and appealable order and there is no just reason for delay.

_/s/ Alan C. Stout_
Alan C. Stout
United States Bankruptcy Judge

Dated: February 16, 2016

13